UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CORNELIUS HOLLIS,
        Plaintiff,
v.                                                    Case No. 2:14-CV-215
                                                        HON. R. ALLAN EDGAR
THOMAS PERTTU, et al.,
        Defendants.
_____/

**OPINION & ORDER**

        Plaintiff Cornelius Hollis, an inmate currently confined by the Michigan Department of Corrections (MDOC), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights. ECF No. 1. After screening, Plaintiff's remaining claims are against the following Defendants: Resident Unit Manager (RUM) Thomas Perttu, Assistant RUM Richard Kerttu, and Sergeant Bruce Hooyman. ECF No. 32, 35.

        The following are the events in question viewed in the light most favorable to Plaintiff. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (citing *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994) (noting any direct evidence offered by Plaintiff in response to a summary judgment motion are accepted as true)). On March 7, 2014, Defendant Kerttu placed a sign above the unit telephones stating that phone calls were limited to fifteen minutes when another inmate is waiting to use the phone. PageID.239. Plaintiff filed a grievance against Defendant Kerttu for placing this sign above the phones, and another grievance for Defendant Kerttu's alleged favoritism toward white prisoners. PageID.239, 242. Plaintiff also wrote to Warden Tribley about both of these concerns on March 15 and 17, 2014. PageID.191-192. On March 18, 2014, Defendant Perttu interviewed Plaintiff about his grievances against Defendant Kerttu. PageID.224. After this interview, Plaintiff filed a grievance against Defendant Perttu,

claiming that he was being racist during Plaintiff's grievance interview. PageID.224.

The next day, on March 19, 2014, when Defendant Kerttu was doing rounds, he asked Plaintiff whether Plaintiff had signed off on his grievances against him yet. PageID.172, 200. Plaintiff stated that he did not. PageID.200. Defendant Kerttu then told Plaintiff and his cell-mate that they were going to be moving bunks because his bed space was needed for two inmates that were part of the National School Lunch Program (NSLP).[1] PageID.196, 200. Plaintiff told Defendant Kerttu that he had an enemy in E-Unit (where he was to be transferred), but Plaintiff was transferred anyway. PageID.172, 200. That same day, Officer Niemi gave Plaintiff a direct order to move bunks, but Plaintiff refused to comply. PageID.202, 204. Officer Niemi then filed a misconduct ticket against Plaintiff due to his failure to comply with a direct order. PageID.202. That same day, Plaintiff filed a request to be placed in protective custody (PC). PageID.206.

Defendant Hooyman conducted the investigation into Plaintiff's PC request. PageID.206. Plaintiff told Defendant Hooyman that he could not move bunks because "some guys" were out to stab him in the unit where he was to be moved. PageID.206. Plaintiff also told Defendant Hooyman that he could not move to that unit because other inmates were upset with him over his phone usage. PageID.206. Plaintiff was placed in temporary segregation pending review of his PC request. PageID.206. On March 21, 2014, a different PC investigator (not Defendant Hooyman) concluded that Plaintiff should be returned to the general population, as his fears of other inmates and prison staff were unwarranted. PageID.206. On March 25,

---

[1] This is a program in which prisoners under 21 years old that do not have a GED or high school diploma take classes twice a day. PageID.422. NSLP inmates are to be housed with other inmates under the age of 21. *Id.* Plaintiff was well over that age at all relevant times.

2014, Plaintiff filed a grievance against Defendant Hooyman for "falsifying" the protective custody investigation report. PageID.249. This grievance was later denied. PageID.250.

On March 26, 2014, inmate Thomas wrote a note stating that he thought there would be a problem between him and Plaintiff if they shared a cell. PageID.208. The next day, Plaintiff had his misconduct hearing. PageID.218. Plaintiff was found guilty of disobeying Officer Niemi's direct order. PageID.218. Based on being found guilty, Plaintiff's security level was changed from a level I to level II. PageID.220. That same day, Plaintiff filed a grievance against the misconduct hearing officer for finding him guilty. PageID.226.

Based on the abovementioned allegations, Plaintiff asserts that Defendants violated his rights in the following ways:

> I. Plaintiff[']s constitutional rights were infringed upon by clear retaliatory action by Defendants Perttu[, and] Kerttu . . ., where Plaintiff exercised his right to protected conduct (filing grievances, and civil suits) and was retaliated against for these protected conduct actions.
>
> II. The First Amendment 42 USC 1983 Civil Rights Claim against Michigan Department of Corrections employees . . . Perttu, . . . and Kerttu for conspiring to retaliate against Plaintiff for exercising his protected conduct (filing grievance and civil actions) by increasing Plaintiff[']s custody level[,] removing Plaintiff from his mandated pre-release parole classes, issuing Plaintiff false/unsupported misconduct reports, placing Plaintiff in segregation and discriminating against Plaintiff.
>
> III. Plaintiff was subjected to racial discrimination by defendants . . . . Kerttu and Perttu by making racial comments, [and] degrading Plaintiff.
>
> IV. Plaintiff[']s right to be free from assaults was violated by Defendants . . . Hooyman, . . . Perttu, [and] Kerttu . . . for refusing Plaintiff protection and plac[ing him] in a safe environment[,] also placing Plaintiff back into a unit where he clearly indicated he was

>meant harm by other inmates.

>V. Defendants . . . Perttu, Krettu [sic] [, and] Hooyman are all subjected to supervisory liability for the fact that the positions held in MDOC are that of a supervisory nature and any one of these Defendants had the ability to cease the retaliation that was occurring against Plaintiff. Also the fact as Michigan Department of Corrections is named as a municipal corporation within this civil action, MDOC is subjected and the other Defendants through vicarious punishment.

PageID.179-180, 181-184, 186-187. Defendants filed a motion for summary judgment on December 22, 2015. ECF No. 47. On January 29, 2016, Plaintiff filed a response to Defendants' motion for summary judgment. ECF No. 56. Defendants filed a reply on March 3, 2016. ECF No. 59. The matter is now ready for a decision.

I.

Presently before the Court is Defendants' motion for summary judgment, pursuant to Fed. R. Civ. P. 56. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true.

*Muhammad*, 379 F.3d at 416 (*citing Adams*, 31 F.3d at 382). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court could not adopt that version of the facts for the purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

II.

Plaintiff raises five separate claims alleging that Defendants violated his rights by: (1) retaliating against him, (2) conspiring to retaliate, (3) racially discriminating against him, (4) failing to protect him from attacks by other prisoners, and (5) being liable for these events under supervisory liability. Each claim will be reviewed individually.

**A. Retaliation**

In Plaintiff's first claim, he states that Defendants Perttu and Kerttu retaliated against him after "Plaintiff exercised his right to protected conduct (filing grievances, and civil suits)." PageID.179-180. Specifically, on March 13 and 21, 2014, Plaintiff filed a grievance against Defendant Kerttu because Defendant Kerttu put a sign above the phones, stating that prisoners can only use the phones for fifteen minutes when others are waiting. PageID.239.

Plaintiff filed another grievance against Defendant Kerttu for actions occurring on March 13, 2014, when Defendant Kerttu showed "favoritism among & against inmates that are non-white." PageID.242.  On March 21, 2014, Plaintiff filed yet another grievance against Defendant Kerttu because Defendant Kerttu ordered Plaintiff to move to a different unit.  PageID.245.  In addition, on March 24, 2014, Plaintiff filed a grievance against Defendant Perttu for having a "Jim Crow demeanor" with Plaintiff on March 18th.  PageID.224.  All of these grievances were denied.  PageID.241, 244, 248.  Plaintiff claims that because he filed these grievances, Plaintiff's security level was improperly increased from level I to level II, which negatively affected him because he then had to be moved to a facility that does not offer his requisite pre-release programs.  PageID.220.

In general, retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Here, Plaintiff has sufficiently alleged that he engaged in a protected conduct (filing grievances). *See Smith*, 250 F.3d at 1037 (noting that the filing of a grievance is a constitutionally protected conduct for which a prisoner cannot be subjected to retaliation); *Hall v.*

*Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000). In addition, Plaintiff has alleged that an adverse action was taken (that he was transferred as a result of not signing off on the grievances against Defendant Kerttu). PageID.200; *see Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (noting that the relevant question for the adverse inquiry prong is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence). Notably, however, Plaintiff has not demonstrated the third prong of his retaliation claim—that there is a causal connection between being transferred and his grievance practices.

In regard to Plaintiff's claim against Defendant Kerttu, Plaintiff has not shown that Defendant Kerttu transferred Plaintiff because of Plaintiff's grievances against him. Plaintiff claims that immediately after he told Defendant Kerttu that he did not sign off on the grievances against Defendant Kerttu, Defendant Kerttu then told Plaintiff that he was going to be transferred. However, the evidence shows that Defendant Kerttu told both Plaintiff and his cell-mate that they would have to move beds because two NSLP prisoners had to use their bed space. PageID.204. As a result, Plaintiff has not provided any information that his bunk move was based on retaliation rather than the administrative needs of the prison. Therefore, Plaintiff's claim against Defendant Kerttu fails.

Moreover, in relation to his claim against Defendant Perttu, Plaintiff has not shown that Defendant Perttu transferred him from a Level I to a Level II facility based on Plaintiff's grievances against Defendant Kerttu. Rather, the evidence of record indicates that Plaintiff was going to be transferred from a Level I facility to a Level II facility due to being

found guilty of the misconduct violation issued by Officer Niemi. PageID.220. Therefore, Plaintiff has not shown that his grievance practices motivated Defendant Perttu to transfer him or increase his security level. *See Mount Healthy City Sch. Dist. Bd. of Educ.*, 429 U.S. at 287 (noting that the plaintiff must show that the protected conduct was a substantial or motivating factor in the defendant's alleged retaliatory conduct). As a result, Plaintiff's retaliation claim against Defendant Perttu also fails.

### B. Conspiracy to Retaliate

Plaintiff's second claim is that Defendants Perttu and Kerttu conspired to retaliate against Plaintiff "for exercising his protected conduct (filing grievance[s] and civil actions)," and that Defendants conspired to increase Plaintiff's custody level, remove Plaintiff from his "mandated pre-release parole classes," issue him "false/unsupported misconduct reports," place "Plaintiff in segregation," and discriminate against Plaintiff. PageID.181-182.

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action.'" *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 565 (2007) (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible

suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff's allegations of a conspiracy are conclusory and speculative, especially considering that this Court has established that these Defendants did not retaliate against Plaintiff. Moreover, even if this Court had not decided Plaintiff's retaliation claim as it did, Plaintiff has alleged no more than a mere "possibility" of a conspiracy, as he has not provided any factual information to suggest that an agreement was made between Defendants. *Twombly*, 550 U.S. at 556; *see* PageID.182 (noting that the MDOC employees "conspired to retaliate against plaintiff for exercising his protected conduct," i.e., filing grievances and a civil suit). Ultimately, Plaintiff's conspiracy claim was not alleged with any particularity, and instead was conclusory. *Twombly*, 550 U.S. at 565. Therefore, Plaintiff's civil conspiracy claim fails.

**C. Racial Discrimination**

Next, Plaintiff claims that Defendants Kerttu and Perttu discriminated against him and made racist comments to him. PageID.183. Specifically, Plaintiff claims that both Defendants referred to him as a "porch monkey," and told him that "you people are really this stupid," among other things, on a regular basis. PageID.183.

Claims of abusive language, or of general harassment, do not state an Eighth Amendment or substantive due process violation. *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir, 1987); *Blair v. Barnhart*, No. 08-CV-11626, 2008 WL 1858913, at *1 (E.D. Mich. Apr. 24, 2008) (noting that verbal harassment, standing alone, does not state a constitutional violation under § 1983). However, the Sixth Circuit has held that a pattern of racial harassment involving

racial slurs may violate the Equal Protection Clause. *Knop v. Johnson*, 977 F.2d 996, 1013-14 (6th Cir. 1992), *cert. denied*, 507 U.S. 973 (1993). However, the use of racial slurs, without harassment or some other conduct that deprives the victim of established rights, fails to state a claim for violation of the Equal Protection Clause. *Williams v. Bramer*, 180 F.3d 699, 706 (5th Cir. 1999); *Williams v. Kaufman Cnty.*, 86 F. Supp. 2d 586, 598 (N.D. TX, Feb. 7, 2000); *Oliver v. Cuttler*, 968 F. Supp. 83, 88 (E.D. N.Y., May 24, 1997).

Here, Plaintiff has not established that he suffered an equal protection violation due to the degrading language used by Defendants Kerttu and Perttu. While Plaintiff has sufficiently alleged that both Defendants used racial slurs, he has not demonstrated that Defendants engaged in "some other conduct" or harassment that deprived him of an established right. Rather, Plaintiff merely concludes that Defendants discriminated against him, without explaining why or how. PageID.183-184. Conclusory allegations, without a basis in the facts, are insufficient to state a claim. *Twombly*, 550 U.S. at 557 (noting "naked assertion[s]" without "further factual enhancement" are insufficient to state a claim). Consequently, Plaintiff's claim that Defendants Perttu and Kerttu used racial slurs against him is denied.

**D. Failure to Protect**

In Plaintiff's fourth claim, he alleges that Defendants Hooyman, Perttu, and Kerttu failed to protect him from assaults by other prisoners by deciding not to place him in a "safe environment" and instead "placing Plaintiff back into a unit where he clearly indicated he was meant harm by other inmates." PageID.184. Specifically, Plaintiff claims that he told Defendants that he could not be housed with another inmate in E-Unit because the other inmate would harm him; however, despite his vocalized concerns, Plaintiff was still housed with this inmate.

PageID.185-186.  In addition, Plaintiff claims that he should have been placed in protective custody while the investigation into his protective custody request was ongoing.  PageID.185  Ultimately, Plaintiff claims that Defendants violated his rights by subjecting him to "possible assault and great bodily harm."  PageID.186.

Under the Eighth Amendment, a prison official has a duty to protect an inmate from violence caused by other prisoners.  *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Nelson v. Overberg*, 999 F.2d 162, 165 (6th Cir. 1993); *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *Roland v. Johnson*, 856 F.2d 764 (6th Cir. 1988); *McGhee v. Foltz*, 852 F.2d 876, 880-81 (6th Cir. 1988).  "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment."  *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (citations omitted).  Recognizing that a prison official has an obligation to protect an inmate from assault by another inmate, the Supreme Court defined deliberate indifference as requiring a showing that the prison official consciously disregarded a substantial risk of serious harm to plaintiff.  *Id.* at 839.  The court stated:

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as infliction of punishment.

*Id.* at 837.  Thus, in order to support a claim that a prison official failed to protect plaintiff, two conditions must be satisfied:  (1) the inmate must show that a substantial risk of harm was present and (2) that the defendants, having knowledge of that risk, possessed a culpable state of

mind. *Id.* An error of judgment does not subject a prison official to liability. *Jeffers v. Heavrin*, 10 F.3d 380, 381 (6th Cir. 1993).

Here, Plaintiff has provided documentation indicating that Defendants knew he was afraid of being transferred and changing bunks because "some guys [were] out to stab [him] over using the unit phone too much." PageID.436. However, Plaintiff has not shown that Defendant's had a culpable state of mind in moving him. Rather, the evidence shows that Defendants took Plaintiff's concerns and protective custody request seriously. For example, after Plaintiff filed his protective custody request, he was placed in temporary segregation for the duration of the investigation into his request. PageID.436. After the investigation concluded, the investigator determined that Plaintiff faced no foreseeable harm, and that he could be placed back into the general population. PageID.436. Even if this conclusion was wrong, which it does not appear to be (since Plaintiff states he was never harmed), an error of judgment is not enough to subject Defendants to liability. *Jeffers*, 10 F.3d at 381. Based on this evidence, it is clear that Defendants did not act with a culpable mind when transferring Plaintiff—meaning Plaintiff's failure to protect claim fails.

### E. Supervisory Liability

Finally, Plaintiff claims that Defendants Hooyman, Kerttu, and Perttu "are all subjected to supervisory liability" due to the positions they hold at MDOC, and that these Defendants "had the ability to cease the retaliation that was occurring against Plaintiff," but did not. PageID.186.

"It is well-settled that '[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under the theory of *respondeat superior*.'"

*Peatross v. City of Memphis*, No. 15-5288, 2016 WL 1211916, at *5 (6th Cir. Mar. 29, 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). Stated differently, "a supervisor cannot be held liable simply because he or she was charged with overseeing a subordinate who violated the constitutional rights of another." *Id.* (citing *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006)). Therefore, a mere "failure to act" does not constitute supervisory liability. *Id.*

Rather, to establish supervisory liability, "[t]here must be some conduct on the supervisor's part to which a plaintiff can point that is directly correlated with the plaintiff's injury." *Essex v. Cnty. of Livingston*, 518 Fed. App'x 351, 355 (6th Cir. 2013); *see Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) ("[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.'") (emphasis added) (citation omitted); *see, e.g., Phillips Roane Cnty. Tenn.*, 534 F.3d 531, 543 (6th Cir. 2008) (noting that plaintiff needs to show that defendant at least implicitly authorized or knowingly acquiesced to the offending officers' improper conduct); *Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992) (noting, at minimum, the supervisor must have had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable). "Accordingly, where an official's execution of his or her job function causes injury to the plaintiff, the official may be liable under the supervisory-liability theory." *Peatross*, 2016 WL 1211916, at *6 (citing *Hill v. Marshall*, 962 F.2d 1209, 1213 (6th Cir. 1992) and 42 U.S.C. § 1983).

Here, Plaintiff claims that Defendants misused their authority as supervisors at MDOC. PageID.187. However, he does not explain or show that these Defendants somehow

condoned unconstitutional acts by other MDOC employees. To the extent that Plaintiff raises abuse of power claims against Defendants, these claims have already been addressed in this Opinion. To the extent that Plaintiff alleges a claim of supervisory liability against each Defendant, this claim also fails because Plaintiff has not demonstrated that the supervisors condoned any unconstitutional acts by other MDOC employees. *See Essex*, 518 Fed. App'x at 355 (noting plaintiff must point to the supervisor's conduct and explain how it correlated to plaintiff's injury for a claim of supervisory liability to be made). As a result, Plaintiff's supervisory liability claim fails.

III.

Overall, even when looking at the facts in the light most favorable to Plaintiff, he has failed to establish that Defendants violated his constitutional rights. Fed. R. Civ. P. 56; *see Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (stating that *pro se* complaints are held to less stringent standards than pleadings drafted by attorneys, and will only be dismissed if the claim undoubtedly contains no facts to support its request for relief). Accordingly, Defendants' Motion for Summary Judgment is appropriate.

In light of the foregoing, this Court concludes that Defendants' Motion for Summary Judgment (ECF No. 47) is **GRANTED.** Plaintiff's claims against Defendants Perttu, Kerttu, and Hooyman are **DISMISSED WITH PREJUDICE**. An Order and Judgment consistent with this Opinion will be entered.

**SO ORDERED**.

Date:__4/6/2016_____     _/s/ *R. Allan Edgar*_____
                              R. ALLAN EDGAR
                              UNITED STATES DISTRICT JUDGE